In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1889 & 10-3083

LISA PAKOVICH,

*Plaintiff-Appellee,*

*v.*

VERIZON LTD PLAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cv-00090-MJR-PMF—**Michael J. Reagan**, *Judge.*

ARGUED APRIL 6, 2011—DECIDED JULY 22, 2011

Before FLAUM, EVANS, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* This case comes to us for a second time. Lisa Pakovich worked as a retail sales representative for Verizon when she became disabled and sought long-term disability benefits under Verizon's ERISA plan ("the Plan") after a series of back surgeries. On the first appeal, we reversed the district court's decision that Pakovich was ineligible for long-term disability benefits after the first twenty-four months and

remanded to Broadspire Services, Inc., the Plan Adminis-
trator, to determine her eligibility for benefits during
that time period.

Having not heard from the Plan for almost five
months, Pakovich again filed suit under ERISA, this time
claiming that the Plan's silence constituted a deemed
denial of her benefit claim. She requested disability
benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C.
§ 1132(a)(1)(B), and attorney fees pursuant to ERISA
§ 502(g), 29 U.S.C. § 1132(g). A little over a month
later, the Plan informed her that it would pay the benefits
she requested in her complaint and shortly thereafter
moved to dismiss the case as moot. The district court
denied the motion, issued a judgment against the Plan
for the exact amount it had agreed to pay Pakovich, and
later denied Pakovich's motion for fees.

We vacate the district court's decision granting
Pakovich summary judgment on her benefit claim, but
affirm its denial of her fee request.

## I. Background

Pakovich initially filed suit under ERISA § 502(a) against
Broadspire, seeking long-term disability benefits from
the ERISA Plan after Broadspire determined that she
was no longer entitled to them ("*Pakovich I*"). The district
court concluded that Broadspire's decision to terminate
Pakovich's long-term disability benefits under the "own
occupation" standard (under which Pakovich must
have been unable to perform the essential functions of

her sales position with Verizon to receive benefits) was arbitrary and capricious, and thus that Pakovich was entitled to disability benefits for the first twenty-four months. It further found that she was not entitled to disability benefits beyond twenty-four months because she did not qualify under the "any occupation" standard (under which benefits were available only if Pakovich was disabled from all occupations). It thus awarded Pakovich benefits from May 14, 2004, through July 16, 2004, but denied benefits beyond July 16.

On appeal, we reversed the district court's decision that Pakovich was ineligible for benefits beyond twenty-four months and remanded to the Plan Administrator to determine her eligibility for benefits during that time period. *Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 607 (7th Cir. 2008). We also denied her request for attorney fees, costs, and expenses incurred on appeal. *Id.* We issued our opinion on July 24, 2008, and the district court remanded Pakovich's claim to the Plan Administrator on September 4, 2008.

Having not heard whether the Plan would pay "any occupation" benefits for almost five months, Pakovich filed a second suit ("*Pakovich II*") on January 30, 2009, under ERISA § 502(a)(1)(B), this time against the Plan,[1] claiming that the Plan's failure to determine her benefits between September 4, 2008, and January 29, 2009, con-

---

[1] The suit was originally filed against Broadspire, Verizon Communications, Inc., and AETNA Insurance Company, but the Plan was later substituted as the proper defendant.

stituted a "deemed denial" of her benefits claim. She sought all the benefits to which she was entitled under the terms of the Plan, interest on all unpaid amounts, and legal fees, costs, and expenses incurred in pursuing the case.

On March 6, 2009, a little over a month after filing *Pakovich II*, Pakovich's counsel learned from the Plan's claim handler that the Plan had agreed to pay her "any occupation" benefits from July 15, 2004. On April 7, 2009, Pakovich was sent a letter with a check that paid back benefits and past due interest owed since 2004. The letter also indicated that Pakovich would continue to receive benefits from the Plan as long as she remained qualified. The payments compensated Pakovich for the entire amount she sought for her benefit claim in *Pakovich II*.

On April 14, 2009, the defendants in *Pakovich II* filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that the case was moot because the Plan had paid the benefits Pakovich sought in her complaint and agreed to continue paying them in the future as long as she remained eligible. After the district court denied the motion, Pakovich filed a motion for summary judgment that sought monthly benefits in the amount the Plan was already paying her and attorney fees. The Plan cross-moved for summary judgment.

On March 24, 2010, the district court granted summary judgment for Pakovich, concluding that she was disabled under the "any occupation" standard and ordering the Plan to pay Pakovich disability benefits on a monthly

basis until she turned sixty-five years old or Verizon, consistent with the terms of the Plan and ERISA, determined that Pakovich was no longer entitled to the benefits. The district court denied Pakovich's request for attorney fees in a separate opinion and later rejected her Rule 60 motion to reconsider that decision.

The Plan appeals the district court's decision that Pakovich's benefit claim was not moot, and Pakovich appeals the district court's denial of her request for fees. After briefly discussing jurisdiction, we review each argument in turn.

## II. Discussion

### A. Appellate Jurisdiction

Briefing came in two rounds, the first addressing the district court's mootness decision, the second regarding its denial of Pakovich's motion for fees. The first briefs debate whether the matter was a final order under 28 U.S.C. § 1291 when the district court had yet to rule on Pakovich's motion for fees. This case comes to us as one consolidated appeal with nothing pending in the district court. We thus exercise jurisdiction pursuant to 28 U.S.C. § 1291.

### B. Mootness

Pakovich's complaint in *Pakovich II* seeks long-term disability benefits under a deemed denial theory—claiming that the Plan had not notified Pakovich of whether

she was eligible for benefits under the "any occupation" provision almost five months after the district court remanded her case to the Plan Administrator—and legal fees under ERISA § 502(g), ERISA's fee-shifting provision. Despite the fact that the Plan had paid Pakovich the benefits she requested in her complaint and agreed to continue paying into the future, the district court determined that Pakovich's claim for benefits was not moot. It then granted Pakovich summary judgment on her benefits claim, ordered the Plan to pay her long-term disability benefits, and later denied Pakovich's request for attorney fees.

On appeal, the Plan argues that the district court lacked subject matter jurisdiction because the case was moot after it agreed to pay the benefits Pakovich requested in her complaint. "'Whether a case has been rendered moot is a question of law that we review de novo.'" *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008) (quoting *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 928-29 (7th Cir. 2003)). We conclude that Pakovich's benefit claim became moot when the Plan paid it in full, but that the district court retained equitable jurisdiction to adjudicate her fee claim.

Federal courts lack subject matter jurisdiction when a case becomes moot. *In re Repository Techs., Inc.*, 601 F.3d 710, 716-17 (7th Cir. 2010); *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009). Accordingly, "if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual

relief whatever to a prevailing party, the [case] must be dismissed." *Cornucopia Inst.*, 560 F.3d at 676 (internal quotation marks and citations omitted). While an "entire claim is not mooted simply because the *specific* relief it sought has been rendered moot, [to avoid dismissal based on mootness, the party seeking relief] must . . . demonstrate that the court's adjudication would affect it in some way." *Id.*; *see also United States v. Segal*, 432 F.3d 767, 773 (7th Cir. 2005) ("When making a mootness determination, we consider . . . whether it is still possible to fashion *some* form of meaningful relief to the [plaintiff] in the event he prevails on the merits." (internal quotation marks and citations omitted)). Importantly, a claim for fees cannot save a case from becoming moot. *Cornucopia Inst.*, 560 F.3d at 676.

We agree with the Plan that Pakovich's benefit claim is moot and that the district court erred in concluding otherwise. After Pakovich filed her complaint and before the Plan moved for dismissal, the Plan paid Pakovich the benefits she requested in her complaint, including the amount she was owed at the time and the proper amount going forward. Since Pakovich had received everything she requested in her benefit claim, that claim became moot and the district court lacked jurisdiction to enter summary judgment against the Plan. *See Silk v. Metro. Life Ins. Co.*, 310 Fed. Appx. 138, 139-140 (9th Cir. 2009) (finding that a claim for "own occupation" benefits became moot after the defendant paid the benefits) (not selected for publication); *see also Cornucopia Inst.*, 560 F.3d at 675-76 (holding that a FOIA claim becomes moot after the government produces all

documents a plaintiff requests); *Holstein v. City of Chi.*, 29 F.3d 1145, 1147-48 (7th Cir. 1994) (finding a claim moot where the defendant offered the plaintiff all damages to which he was entitled).

Finding Pakovich's benefit claim moot leaves us with a more challenging question. Because "a claim for attorneys' fees is separate from the merits of the action," *Cornucopia Inst.*, 560 F.3d at 676 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988)), we must address whether the district court retained jurisdiction to adjudicate Pakovich's claim for attorney fees under ERISA § 502(g) after her underlying benefit claim became moot. We conclude that it did.

In the FOIA context, courts exercise equitable jurisdiction to adjudicate fee claims in similar circumstances. Specifically, when a plaintiff seeks information under FOIA and associated attorney fees, courts retain equitable jurisdiction to adjudicate the fee claim after the defendant produces the requested information and thus renders the FOIA claim moot. *See, e.g.*, *Cornucopia Inst.*, 560 F.3d at 676-78; *Anderson v. U.S. Dep't of Health & Human Servs.*, 3 F.3d 1383, 1385 (10th Cir. 1993) ("Dismissing the [FOIA] action as moot . . . did not affect plaintiff's right to seek attorney's fees; the fee request 'survive[d] independently under the court's equitable jurisdiction.'" (quoting *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986)).

We extend our FOIA jurisprudence into the ERISA context, and hold that where a plan participant or beneficiary sues to recover benefits under ERISA § 502(a) on a

deemed denial theory and attorney fees under ERISA § 502(g), and the plan pays the benefit claim in full shortly after the plaintiff files suit, courts retain equitable jurisdiction to adjudicate the fee claim. Were courts to lack jurisdiction, opportunistic plans could routinely delay deciding whether to pay benefit claims until participants and beneficiaries file suit, effectively requiring them to incur legal costs unrecoverable under ERISA § 502(g) in order to receive benefits to which they are legally entitled. In this case, if plans routinely pay benefit claims in full shortly after participants and beneficiaries file suit, seeking, perhaps, to avoid having to pay the plaintiff's costs for bringing the ERISA suit, plans could significantly blunt ERISA § 502(g). That provision permits certain ERISA plaintiffs who achieve "some degree of success on the merits" of their ERISA suits to recover the legal costs they incurred in achieving that success. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2152, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)); *see also* 29 U.S.C. § 1132(g). Thus, if courts lacked jurisdiction over claims for attorney fees in cases like Pakovich's, a financial barrier to seeking ERISA benefits would exist such that plaintiffs should sue for benefits only if their expected recovery of benefits exceeded their legal fees. Such a barrier would contradict one of ERISA's primary policies, to protect "the interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Permitting courts to exercise equitable jurisdiction thus effectu-

ates Congress's intent. After concluding that the district court retained jurisdiction over Pakovich's claim for attorney fees, we now turn to the substance of its decision.

## C. Attorney Fees

Pakovich requested attorney fees and costs under ERISA § 502(g) for her appeal in *Pakovich I* and for the entirety of *Pakovich II*. We denied her request for fees and costs incurred on appeal in *Pakovich I*. After, the district court denied her request for fees in *Pakovich II* and her motion for reconsideration under Federal Rule of Civil Procedure 60(b), which permits courts to "relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect," and, among other things, for "any other reason that justifies relief." FED. R. CIV. P. 60(b).

Pakovich challenges the district court's denial of her fee claim under ERISA § 502(g) and her motion to reconsider. We review the district court's initial decision for abuse of discretion, *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005), and "we apply an 'extremely deferential' abuse of discretion standard" when reviewing the district court's denial of Pakovich's motion for reconsideration, *Eskridge v. Cook Cnty.*, 577 F.3d 806, 808 (7th Cir. 2009) (quoting *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004)). "Because relief under Rule 60(b) is 'an extraordinary remedy and is granted only in exceptional circumstances,' a district

court abuses its discretion only when 'no reasonable person could agree' with the decision to deny relief." *Eskridge*, 577 F.3d at 809 (quoting *McCormick v. City of Chi.*, 230 F.3d 319, 327 (7th Cir. 2000)).

ERISA § 502(g)(1) provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). When the district court denied Pakovich's fee petition, our case law provided that only "prevailing parties" were entitled to recover under ERISA § 502(g)(1). *See, e.g.*, *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 670 (7th Cir. 2007). Since, the Supreme Court held that "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)." *Hardt*, 130 S.Ct. at 2156; *see also Huss v. IBM Med. & Dental Plan*, Nos. 10-1061, 10-2749, slip op. at 27, 2011 WL 1388543, at *12 (7th Cir. Apr. 13, 2011). Instead, it explained that a claimant must show "'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Id.* at 2158 (quoting *Ruckelshaus*, 463 U.S. at 694). It further wrote that "'trivial success on the merits' or a 'purely procedural victor[y]'" is inadequate, but that it is sufficient "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688, n.9). *Hardt* did not, however, modify the second step in evaluating a fee petition. *Id* at 2158 n.8. Accordingly,

after concluding that a party has shown "some degree of success on the merits" and is thus eligible for fees, courts must determine whether fees are appropriate. *Huss*, slip op. at 27-28, 2011 WL 1388543, at *12. To award fees, "court[s] must find the non-prevailing party's litigation position was not substantially justified." *Huss*, slip op. at 28, 2011 WL 1388543, at *12. Although we have used a five-factor test to inform the "substantially justified" standard,[2] the inquiry focuses on "whether the [d]efendant['s] litigation position was substantially justified and taken in good faith or whether [it was] out to harass [the plaintiff]." *Id.* at *13, slip op. at 28.

We affirm the district court's denial of Pakovich's request for fees and costs. In its initial decision denying fees and costs, the district court considered Pakovich a "prevailing party," concluded that the Plan's opposition to *Pakovich II* did not meet the standard of good faith, and ultimately found a fee award warranted. But

---

[2]  The five factors include:

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Herman*, 423 F.3d at 696 (internal quotation marks and citations omitted).

it nonetheless denied Pakovich's fee claim based on our denial of her request for fees on appeal in *Pakovich I* and her failure to properly substantiate her claim in *Pakovich II*. In particular, it explained that Pakovich did not provide receipts, invoices, or vouchers to verify the costs she sought. It further reasoned that there was no documentation supporting her request for fees that would indicate a reasonable hourly rate or the amount of time reasonably spent on the case, among other things. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) ("The burden of proving the market rate is on the applicant."). It wrote that Pakovich submitted merely an invoice showing the billing charges from her counsel and someone referred to as "SGS," whom the district court could not identify. The district court was unwilling to speculate on whether the fees and costs were reasonable, and thus denied Pakovich's claim.

Pakovich then moved for reconsideration under Rule 60(b), contending that she had substantiated her claim in the form of an affidavit reflecting that the parties agreed that her counsel's rate of $300 and her paralegal's rate of $90 were reasonable. The district court again denied Pakovich's claim, this time explaining that she had attached the affidavit as an exhibit to her motion for summary judgment instead of her fee petition (she filed both documents on the same day), and that her petition did not refer the court to the affidavit filed with her motion for summary judgment. It further noted that, among other things, the affidavit purported to include an exhibit reflecting the time and expenses Pakovich's counsel devoted to the litigation that was not attached

to the petition, and that her petition cited to multiple exhibits that itemized her counsel's time, but that one was not attached. Pakovich does not challenge these findings on appeal.

Thus, we need not determine whether Pakovich achieved "some degree of success on the merits" under *Hardt* or whether the Plan's conduct was "substantially justified."[3] We must decide solely whether the district court abused its discretion by denying Pakovich's fee claim based on our denial of fees in *Pakovich I* and her inadequate filings in *Pakovich II*.

Pakovich cites no authority demonstrating that the district court abused its discretion. First, she requests that we grant the fees from *Pakovich I* that we have already denied, contending that we should reevaluate our decision in *Pakovich I* in light of the Plan's conduct in *Pakovich II*. We disagree. On rehearing in *Pakovich I*, we explained that "assuming . . . Broadspire Services is the 'loser,' it cannot be said that its position on appeal was simply to harass Pakovich, when it was defending the district court's approach to a novel issue in this Cir-

---

[3] That said, we recognize that exercising equitable jurisdiction in cases like Pakovich's would be unhelpful if similar plaintiffs could not meet the standard in *Hardt*. We believe that a plan participant or beneficiary achieves "some degree of success on the merits," and is thus eligible for attorney fees under § 502(g), where she, as here, seeks to recover benefits on a deemed denial theory and the plan pays the entire amount requested shortly after the plaintiff files suit.

cuit." *Pakovich v. Broadspire Servs., Inc.*, 2008 U.S. App. LEXIS 17597, at *2 (7th Cir. Aug. 14, 2008). The fact that the Plan engaged in more questionable conduct after *Pakovich I*, which formed the basis of *Pakovich II*, does not alter our conclusion that its conduct in *Pakovich I* was substantially justified. *Pakovich II* involves a benefit claim based on a deemed-denial theory, a theory not pursued in *Pakovich I*. Further, to the extent Pakovich asks us to overturn case law that directs courts to determine whether the losing party's position was "substantially justified," *see, e.g.*, *Huss*, slip op. at 28, 2011 WL 1388543, at *12, she provides no compelling reason for doing so. *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 n.5 (7th Cir. 1998) ("We require compelling reasons to overturn Circuit precedent.").

Pakovich's arguments for fees incurred in *Pakovich II* are similarly unpersuasive. First, she concedes that the district court had discretion to deny her fee claim, but points out that the Plan did not challenge the time her counsel claims to have devoted to the case, her counsel's hourly rate, or the costs sought, and argues that the district court thus abused its discretion in denying fees. Pakovich misunderstands the law. The district court was not obliged to award fees merely because the Plan did not specifically oppose those elements of Pakovich's fee claim, especially when Pakovich's fee petition nowhere argued that a $300 rate was reasonable; it merely used that figure to calculate its fees in one of the exhibits attached to its petition. It was Pakovich's burden to present evidence of a reasonable rate, *see Stark*

*v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004), among other things, and the district court had no obligation to scour Pakovich's filings looking for evidence that might have satisfied that burden. Further, we disagree with Pakovich's contention that the Plan conceded in its opposition to her fee petition that $300 was a reasonable hourly rate. It merely calculated for the sake of argument the fees to which it believed Pakovich should be entitled if the court used the rate Pakovich requested; it did not concede that the rate was reasonable. Finally, Pakovich's argument that her failure to adequately substantiate her fee request was inadvertent and excusable under Rule 60(b) is unhelpful. Without more, we find no abuse of discretion.

### III.  Conclusion

For the foregoing reasons, we VACATE the district court's decision granting summary judgment for Pakovich on her benefits claim, and AFFIRM its denial of her fee request.

7-22-11